## FORD *vs.* BUCHANAN.

Where a suit is instituted at Law, and the proceeding at Law is enjoined by Bill—which seeks both discovery and relief—when the Equity cause is reached in its order and called for trial. it is error in the Court to dissolve the injunction and direct the Common Law action to proceed; especially if a motion has been made at a previous stage of the litigation to dissolve the injunction and rightfully refused, and there having been no change in the pleadings in the meantime.

In Equity, in Cass Superior Court. Decision by Judge WALKER, at the March Term, 1860.

This was a bill in equity, exhibited by Francis M. Ford, against Robert Buchanan, in which the complainant alleges:

That in the year 1853, the complainant being a producer of pig iron in the county of Cass, in the State of Georgia, was told by the defendant, who then lived, and who still resides in the city of Cincinnati, in the State of Ohio, that pig iron was worth, and could be sold in the said city of Cincinnati, for from forty-three to forty-eight dollars per ton of 2240 pounds; that the said defendant was at the time a commission merchant, carrying on business in said city of Cincinnati, and in consequence, and in consideration of said representations of the defendant as to the value of pig iron, a contract was made between the parties that complainant should ship pig iron to the defendant, to be by him sold and disposed of on commission, and as the factor and agent of the complainant; that under said contract, complainant drew three bills of exchange upon the defendant for two thousand dollars each—the first dated 26th of September, 1853, and due at six months, the second dated 28th February, 1854, and due at five months, and the third dated the 15th of March, 1854, and due at four months—all of which, as complainant believes, were accepted and paid by the defendant; amounting in all to six thousand dollars; that on the 22d of April, 1854, complainant accepted and paid off a draft drawn by the defendant on the complainant, for two thousand dollars, payable in New York, upon which the defendant realized a premium amounting to twenty-five dollars; that in the years 1853 and 1854, the complainant shipped to the defendant, to Cincinnati, under the contract aforesaid, about one

Ford vs. Buchanan.

hundred and sixteen tons of pig iron—worth, at the time the same was received by the defendant, from $43.00 to $48.00 per ton, which, at the former price, was worth, in the aggregate, the sum of $4,988.00, and at the latter price, $5,568.00 or other sum near that amount; that the freight on said pig iron from Cartersville, Georgia, to Cincinnati, Ohio, was $8.50 per ton, amounting to $986.00, which sum deducted from the value of the iron at $43.00 per ton, would leave said iron of the net aggregate value of $4,002.00 laid down in Cincinnati, and when deducted from the value of the iron at $48.00 per ton, would leave in the hands of the defendant in Cincinnati $4,682.00; that by adding the amount of the draft accepted and paid by complainant, as aforesaid, and the premium realized thereon to the net value of the iron at the smaller price, would make the sum of $6,027.00, and when added to the value of the iron at the larger price, would make $6,697.00; that if said iron had been properly disposed of, would have yielded the defendant for complainant at least the net sum aforesaid of $4,002.00, which, with the draft aforesaid, accepted and paid by complainant, together with the premium thereon, make the sum of $6,027, amply sufficient to have paid off the bills of exchange drawn by complainant on the defendant as aforesaid; that at the greater price, said iron ought to have yielded complainant, together with the said draft and its premium, the sum of $6,697, which sum exceeds the amount of the bills of exchange the sum of $697; that the defendant, for the purpose of defrauding the complainant, has carefully concealed from him all the facts connected with the sale of said pig iron—when it was sold, to whom and at what price sold, and whether for cash or on time, and refuses to render any account of such sale, or to account therefor as commission merchant and factor; that the defendant falsely represents that he has disposed of said pig iron, and that more than half of the proceeds arising from the sale of the same have been applied to the payment of certain charges, which the complainant alleges are false, fraudulent and iniquitous, and gotten up by defendant for storage, commissions, interest, freight, premiums, and other charges having no foundation; that the said defendant, pretends to have failed in business, and to have assigned the pretended indebtedness of complainant to him, to one John T. Lewis and Robert M. Shoemake, of said city of

Cincinnati, and that the said Robert Buchanan, for the pretended use of said Lewis and Shoemake, commenced an action of assumpsit returnable to the September Term, 1856, of Cass Superior Court, against the complainant on an account stated for $6,000, besides interest—which action is now pending on the appeal in said Court; that the statement or account sued on in said action does not show the indebtedness of complainant to the defendant, because, upon a full and fair settlement it will appear that the defendant is indebted to the complainant; that unless restrained, the said action at law will proceed against the complainant, and an unjust recovery he had therein by the said defendant, without accounting to complainant for said pig iron; that sometime in the year 1856, the said defendant, for the purpose of further defrauding the complainant, procured, as complainant believes, one Milton A. Candler to visit the complainant, in order to extract from him an admission of the correctness of the account as sued on in said action of assumpsit, and that said Candler has testified in answer to interrogatories taken out in said action, that complainant admitted an indebtedness to the defendant of over three thousand dollars on the condition of said account stated, together with the false and fraudulent charges aforesaid; that if the complainant made any such admissions, they were made in total ignorance of the condition of the account, as well as the disposition that had been made of the pig iron aforesaid; that what the complainant intended to admit, and may have admitted, was, that he did draw the bills of exchange aforesaid, and that the amounts of them were correctly stated, but not that he was at all indebted to defendant in the premises.

The complainant, by his bill, prays: That the defendant may, on oath, answer the charges of the bill, and discover the facts; also, that the defendant may render a full account of the sale of the pig iron, and account for the proceeds; also, that the bills of exchange sued on may be cancelled and delivered up; also, that the said action at law may be enjoined until the hearing of the bill; and also, for general relief.

The injunction issued, as prayed for.

The defendant, Robert Buchanan, filed his answer to the complainant's bill, in which answer he admits: That complainant was a producer of pig iron in Cass county, Georgia,

and that he, the defendant, is a commission merchant in the city of Cincinnati, where he is carrying on, and has carried on such business for more than thirty-five years; he admits that the drafts were drawn by complainant, as stated in the bill, but denies that they were drawn at the solicitation of defendant, but were accepted by defendant, as were also the consignments of pig iron hereinafter mentioned, at the earnest request, and for the use and benefit of the complainant; that said bills of exchange were accepted and paid by the defendant, upon the faith of complainant's agreement to consign to defendant for sale in Cincinnati, Ohio, pig iron of good quality, sufficient to cover the entire amount of such acceptances, together with the defendant's charges and commissions for the same, and also all other advances and commissions on sales, and charges and disbursements for freight, insurance, labor, weighing, advertising, storage, interest, and all other expenses customary amongst merchants; that about the 26th of June, 1854, defendant received 112 $\frac{319}{2268}$ tons of pig iron from the complainant, which was all he ever did receive. He denies that the iron was to weigh 2,240 pounds per ton, but that each ton was to weigh 2,268 pounds; he denies that the iron received was of good quality, or that it was worth in the Cincinnati market, when received, or at any time up to the time of selling the same, from $43 to $45 per ton, but was worth, during the latter part of that period, $25 per ton, and no more; that on the 20th of January, 1855, finding it difficult, if not impossible, to sell the iron in Cincinnati, and in order to place himself in funds to meet his said acceptances for the complainant, the defendant took all of said iron to his own account at a credit of six months, at $25 per ton, which was the highest market price, and the best terms at and on which the iron could be disposed of; that after deducting from the amount of said sale the advances for freight, and the usual and customary charges for labor, storage, weighing, drayage, interest, and commissions, there remained to the credit of complainant the sum of $1,239, which was so applied as a credit, as of the 1st day of August, 1855, on the acceptances aforesaid; that a full and perfect account of said sale of the iron was forthwith rendered to complainant, which was ratified by him without objection; that the defendant, after taking the iron to his own account, forthwith shipped the same to Pittsburgh, where it was sold

by a competent factor, at a sacrifice to defendant of $559.90, for which he expects nothing from complainant; that in taking said iron to himself, as complainant's factor, he took it at more than the full market value of the same, and has fully accounted to complainant therefor; that he has not concealed, nor does he now conceal, anything connected with the pig iron, and denies that any of the charges in his account are unjust or otherwise than fair, usual and customary among merchants; the defendant denies that he has failed, although some of his paper went to protest, and is still unpaid, but he is still in the same business, and at the same place where he has carried it on for more than forty years past; he admits the sale of the claim on complainant to Lewis and Shoemake, and that suit is pending thereon as charged in the bill; the defendant denies owing complainant anything, but insists that the account sued on shows the true condition of the indebtedness between complainant and the said Lewis and Shoemake, the assignees of defendant; the defendant denies ever at any time contriving to defraud complainant by extracting admissions from him through Mr. Candler or others, but insists that if the complainant admitted his indebtedness to defendant, according to the statement of said account, he did it with a full knowledge of the facts, and in accordance with similar admissions to the defendant; the defendant admits that the first bill drawn on him by complainant for $2,000 was paid by complainant by a draft on New York, which, together with $25 premium received by defendant, were duly applied as a credit upon the indebtedness of the complainant—an account of which is as follows:

" 29 January, 1855, at 6 months.

| | | |
|---|---|---|
| " $112\frac{2319}{2608}$ tons pig metal, c 25$ | | $2,809 00 |

" *Charges.*

| | | |
|---|---|---|
| " 26 June, '54—paid railroad charges, | $145 | 00 |
| " freight $116\frac{2153}{2608}$ @ 8 50, | 986 | 83 |
| " weighing metal, | 14 | 50 |
| " drayage to yard 40, | 46 | 40 |
| " 29 Jan., '55— " re-weighing metal, | 14 | 00 |
| " advertising, | 3 | 00 |
| " storage 7 months, | 117 | 60 . |
| " commissions, advancing charges $1218\frac{73}{100}$ c 2½, | 30 | 48 |

Ford vs. Buchanan.

| | | | |
|---|---|---|---|
| " int. and ch'g's 1218$\frac{74}{100}$ 13 mo's, 10 per ct, pr. an'm, | | 132 06 | |
| " commissions on sale 2½ per cent., | | 70 22 | |
| | | $ 1,569 09 | |
| " Net amount due 1st August, 1856, | | | $ 1,239 09 |
| " 15 Oct., '53—to my account p 25 Sept., 6 mo's, | | | $2,000 00 |
| " 10 Mar., '54 " " " " 28 Feb., 5 " | | | 2,000 00 |
| " 20 " " " " " " 15 Mar., 4 " | | | 2,000 00 |
| " 7 Aug., '55—int. to date, 10 per ct. per an., | | | |
| "$2,000, 16 months, 9 days, 163, 271 67 | | | |
| "2,000 12 " 7 " 122 38, 203 89 | | | |
| "2,000 12 " 20 " 126,67, 211 11— | | | 686 67 |
| | | | $6,686 67 |
| " 22 Apr., '54—by check on N. Y. 2,000, | $2,025 00 | | |
| " 7 Aug., '55—interest on 2,025 15 mos. 169, | 263 13 | | |
| " 1 " '56—net sales of pig metal, | 1,239 09 | | |
| " Interest thereon 6 days, | 207 00— | | 3,529 11 |
| " Balance due me, | | | $ 3,157. 96 |

When the case was called in its order, at the March Term, 1860, and a jury had been impannelled to try the same, the presiding judge, on motion of the defendant's counsel, and after argument had thereon, passed the following order to wit:

"The answer of the defendant having come in, it is ordered by the Court that the injunction in said case be dissolved, for the purpose of trying the common law case enjoined by the bill, and that the said common law case proceed to trial, and that the defendant have leave to use the discovery, if he desires it, in defence of said common law case."

The decision of the Court granting this order, and refusing to permit the complainant to try this Equity cause alone, constitutes the errors assigned in this case.

MILNER & PARROTT, for the plaintiff in error.

AKIN, represented by LESTER, for the defendant in error.

*By the Court.*—LUMPKIN, J., delivering the opinion.

When the answer came in to the bill filed in this case, a motion was made by the complainant to dissolve the injunction, which was to restrain the common law action until discovery and relief could be had under the bill. This motion was refused, and the judgment of the Court brought up to this Court by writ of error, praying a reversal. The judgment of the Court below was affirmed. We can not understand, therefore, why, when the equity cause was reached, in its order, the injunction should have been dissolved, and the common law action ordered to be tried. We think the *ad interim* injunction should have been continued until a final decree was rendered under the bill, upon all the issues made by the bill which included the same matters that were involved in the common law case. It might have resulted in a perpetual injunction of the proceeding at law, and thus have saved one trial, at least.

For myself, I should gladly have availed myself, as a matter of policy, of the direction which his honor the presiding judge gave to the litigation—with the admissions of Buchanan in his answer—that the acceptances upon which his suit is brought, were made upon the faith of the iron which was to be forwarded to him by Ford, to be sold by him, and the proceeds applied to the drafts—and that the same had been received, but instead of being disposed of in the market according to his agreement with Ford, had been appropriated to his own use. I can not see how there could have been a recovery in his favor. At any rate, the whole burden of showing that the iron had been fairly accounted for, would have devolved upon him.

Still, the counsel of Ford preferred to take the other course; and he, no doubt, understood the management of his case better than we do. It was his right, we hold, to insist upon trying the equity cause—when reached and called in its order— and no doubt, all the equities between the parties can be better adjusted in this way.

## JUDGMENT.

Whereupon, it is considered and adjudged by the Court, that the judgment of the Court below be reversed, upon the ground that the Court erred in dissolving the injunction, and ordering the action at law to be first tried.